[No. 14905.  Department Two.  January 17, 1919.]

WILLAPA CONSTRUCTION COMPANY, *Appellant*, v.
M. J. SHAHOUR *et al., Respondents.*[1]

PRINCIPAL AND SURETY (13-1)—LIABILITY OF SURETY—SUPPLIES.
A bond conditioned for the performance of a logging contract and the repayment of all sums advanced by the obligee to the principal for labor and lien claims, does not permit recovery for "supplies" furnished by the obligee to the principal, since that was beyond the contemplation of the bond.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered January 9, 1918, upon findings in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*Welsh & Welsh,* for appellant.
*Paul Holbrook,* for respondents.

MOUNT, J.—This action was brought to recover $500, against the defendant as surety upon a contractor's bond for the faithful performance of a contract. Upon issues joined, the case was tried to the court without a jury, and resulted in a judgment in favor of the plaintiff for $52.20, and costs. The plaintiff has appealed.

Appellant alleges that the court erred: First, in not entering judgment for $500, the full penalty on the bond; and second, in not permitting appellant to prove that it furnished supplies on orders drawn by the principal contractor. The first of these assignments of error depends upon the second, so that it will be

[1]Reported in 177 Pac. 785.

necessary to determine only whether the bond was liable for such supplies. It appears that, on June 1, 1915, the appellant, Willapa Construction Company, as party of the first part, entered into a contract with A. V. Larson, as party of the second part.

The first paragraph of that contract provides that the second party will immediately commence cutting into sawlogs of merchantable size and length all of the merchantable trees upon a certain tract of land, the work to be commenced immediately and continued diligently until completed, and to be completed within nine months from the date of the contract.

The second paragraph provides that the second party shall cut the logs into such lengths as the first party may demand, and that he will raft said logs and cause them to be, towed to mill booms in the city of Raymond, for which he shall receive $4 per thousand feet, board measure.

The third paragraph provides that the second party shall cut the timber as close to the ground as practicable and remove all merchantable timber, and cause said logs to be delivered to the mill booms free and clear from all liens, claims and incumbrances.

The fourth paragraph provides that the logs shall be scaled and that the cost shall be borne equally between the parties.

Paragraphs 5 and 6 are as follows:

"(5) The first party agrees that if the second party shall comply with the terms and conditions of this contract, that it will, as said work progresses, pay or honor orders to an amount not to exceed five hundred dollars ($500), which orders shall be given in payment of labor performed for the second party in logging said timber, and shall be drawn by the second party upon the first party.

"(6) It is further agreed between the parties hereto that the second party shall cause to be executed

and delivered to the first party a good and sufficient bond in the penal sum of five hundred dollars ($500) to guarantee the faithful performance of this contract.''

Paragraph 7 provides that, when logs are delivered, if there are any liens or claims against the logs which are lienable, the first party may pay such liens or claims, or retain sufficient money to do so from the sums due, or to become due, the second party, and if such claims or liens, or any advances made, should exceed the amount due the second party, then the first party may at its option terminate the contract and use all the machinery, supplies and equipment of the second party then on the ground in completing the contract.

Paragraph 8 provides that all sums advanced by the first party, regardless of whether or not the sum may exceed the sum of $500, may be retained by the first party from any moneys due, or to become due, the second party.

Paragraph 9 provides that all logs cut from the above land shall be branded with a brand furnished by the first party.

The bond executed by Mr. Larson and the respondent is as follows:

''Know all men by these presents: That we, A. V. Larson, as principal, and M. J. Shahour, as surety, are held and firmly bound unto the Willapa Construction Company, a corporation of the state of Washington, in the penal sum of five hundred dollars ($500), for which payment well and truly to be made we bind ourselves and our and each of our heirs jointly and severally by these presents.

''The condition of the obligation is such that

''Whereas, the above named principal has entered into a contract with the Willapa Construction Company, a copy of which said contract is hereto attached and made a part hereof,

"Now, therefore, if the said principal herein shall faithfully perform all of the terms and conditions of said contract and pay to the said Willapa Construction Company all sums, if any, advanced by it, and cut and remove said timber within the time and manner provided in said contract, and perform all and singular the terms and conditions of said contract to be performed on his part, then this obligation shall be null and void, otherwise to be and remain in full force and effect.

"Witness our hands and seals this 1st day of June, 1915.

                "A. V. Larson, Principal,
                "M. J. Shahour."

Under this contract it is clear that Mr. Larson was authorized to draw upon the appellant for an amount not to exceed $500 in payment of labor performed for the second party in logging said timber; and in the seventh paragraph it is provided that if, when logs are delivered by the second party, there are "any liens or claims against said logs which are lienable, the first party may at its option pay and discharge said liens or claims" from any money which may be due the second party. It seems too plain for argument that the money which was to be advanced by the appellant to Larson under this contract was for claims which might become a lien against the logs cut. It is not claimed by the appellant that recovery was not permitted for items of this character, but it is argued that the court erred in not permitting the recovery for *supplies* furnished to Larson by the appellant. We find nothing in the contract which the bond was given to secure providing for any advancement for supplies. The only advancements contemplated were for the payment of labor performed in logging said timber, or, as provided in the seventh paragraph, for money paid to release claims which might be lienable against

the logs.   There is nothing in the contract which contemplates that the appellant might furnish supplies or loan money to Mr. Larson, and the bond, of course, was not given for any such purpose unless that purpose was designated in the contract.   As a matter of fact, the evidence shows that, after this contract was entered into, the appellant agreed to furnish supplies, and did so; but that, of course, was an entirely independent contract, and it was not secured by the bond sued upon.   The defendant in this case was not the contractor.   He was surety only to the contractor, and therefore had a right to rely upon the contract for which he became surety.   It seems clear from a consideration of the contract and the bond that the surety was liable only for the amounts paid for labor upon the logs, or for claims which were lienable against the logs.   The trial court was therefore right in concluding that lienable items only could be recovered under the bond.

The judgment must therefore be affirmed.

MAIN, HOLCOMB, PARKER, and FULLERTON, JJ., concur.